Richard Brian SERMAN, Plaintiff-
Appellant,

v.

UNIGARD MUTUAL INSURANCE COM-
PANY et al., Defendants-Appellees.

No. 73–1814.

United States Court of Appeals,
Tenth Circuit.

Oct. 18, 1974.

William E. Doyle, Circuit Judge, dissented and filed opinion.

W. Brent Wilcox, Salt Lake City, Utah, for plaintiff-appellant.

H. Wayne Wadsworth, Salt Lake City, Utah, for defendants-appellees.

Before HILL, MOORE* and DOYLE, Circuit Judges.

HILL, Circuit Judge.

Richard Serman brought this declaratory judgment action against Unigard Mutual Insurance Company (Unigard) seeking a declaration that it was liable under a landlord-tenant liability insurance policy for injuries inflicted upon Serman by an insured landlord's agent. The United States District Court for the District of Utah directed a verdict in favor of Unigard at the close of all the evidence, and Serman appeals therefrom.

Appellant Serman is a resident of Salt Lake City, Utah. Appellee, Unigard, formerly Northwestern Mutual Insurance Company, is a Washington corporation licensed to do business in the State of Utah. The relevant facts may be summarized as follows.

Herbert McArthur is the absentee landlord owner of a triplex apartment in

* Of the Second Circuit, sitting by designation.

Salt Lake City, Utah. He and his wife are the named insureds under an owners', landlords' and tenants' liability insurance policy covering the rental premises. The policy obligates Unigard, the insurer, to:

pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury, or

B. property damage

to which this insurance applies,

caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto . . . .

In addition to covering the named insureds, the policy also provided coverage to

any person (other than an employee of the named insured) or any organization while acting as real estate manager for the named insured . . . .

In January, 1971, McArthur employed Roger Mellies, a tenant, to take care of the premises in exchange for a monthly reduction in rent. Mellies' duties were those of a handyman. He was to maintain the lawn, make minor repairs, keep the sidewalks free from snow and ice, and take out the garbage.

Mellies performed his duties without incident until August 27, 1971. Early in the morning on that date Serman was walking his dog past McArthur's apartment complex. As he passed by his dog ran onto a driveway on adjoining property owned by one Schvaneveldt. Serman walked onto the driveway to retrieve the dog. At the same time Mellies was returning home from an evening out. Observing a man (Serman) and a dog on Schvaneveldt's property, he entered his apartment, got his pistol, told his wife there was a prowler on the premises, and went outside.[1]

At this time Mellies observed that Serman was now farther back on Schvaneveldt's property. He told Serman to stop, said he had a gun, and asked Serman who he was and what he was doing. Although Serman testified that he replied, "Hey, I'm just getting my dog," Mellies testified that Serman said nothing. Mellies then pointed the gun in Serman's direction and pulled the trigger on an empty chamber. Serman started to leave, and walked toward the corner of the Schvaneveldt building. Mellies then fired a shot into the building and pursued Serman.

Upon rounding the corner of the building Serman found that he was virtually boxed in by the surrounding building and fences. When Mellies rounded the corner Serman jumped him and a fight ensued. During the scuffle the pistol discharged, striking Serman in the chest.

He instituted suit against Mellies in the District Court of Salt Lake County, Utah. Unigard was notified of the suit but refused to defend on the grounds Mellies was not a real estate manager under the policy, and therefore not an insured. Serman subsequently obtained a $56,058.25 judgment against Mellies.

On September 11, 1972, Serman instituted this declaratory judgment action against Unigard in the United States District Court for the District of Utah. The complaint requested that Mellies be declared an insured under Unigard's policy and that Unigard be declared liable for the judgment Serman obtained against Mellies.

Unigard answered and contended, inter alia, that Mellies was not a real estate manager within the terms of the policy and that Serman's judgment against Mellies was procured by collusion. Additionally, Unigard contended that it had not received timely notice of Serman's claim. Serman subsequently obtained a partial summary judgment on

---

1. Mellies testified that his actions were prompted by recent burglaries and rapes in the area.

the issues of collusion and notice, and the case proceeded to trial.

At the close of all the evidence Unigard moved for a directed verdict in its favor. The trial court found, inter alia, that even if Mellies was a real estate manager that he was not acting within the course of his authority as such at the time of the shooting and therefore was not an insured under the policy. Accordingly, Unigard's motion was granted.

On appeal, Serman argues that the trial court erred in granting Unigard's motion for a directed verdict because it misconstrued the nature of the action as one resting upon the principles of agency rather than insurance policy construction and coverage. The dispositive issues, Serman contends, were whether Mellies was an additional insured within the meaning of the policy terms and, if so, whether his injurious act, in the language of the policy, arose "out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto . . . . "

Unigard concedes, for the purpose of this appeal, that Mellies was a real estate manager, and thus an insured. It nevertheless argues, inter alia, that he was not acting in that capacity at the time Serman was injured.

■■ Seeking to bring Mellies' act within the ambit of a real estate manager's duties Serman urges the general rule that the terms of an insurance policy are to be liberally construed in favor of the insured. This rule is good law but is inapplicable here. Admittedly, it would be helpful in determining whether or not Mellies was a real estate manager. But that is no longer an issue. The policy expressly provides that a real estate manager is insured only *while acting* in that capacity for the named insured. The paramount question is not whether Mellies was a real estate manager, for that has been conceded, but whether he was acting in that capacity at the time of appellant's injury. Such a determination depends upon the au-

thority conferred upon him by McArthur under general agency principles.

■ Considering the evidence in the light most favorable to Serman, we cannot conclude that Mellies was authorized by McArthur to perform security functions. The record discloses that his duties were (1) maintenance and upkeep of the grounds, (2) making minor repairs, (3) receiving minor complaints from other tenants, (4) taking out the garbage, and (5) maintaining the tools and equipment used by him in the performance of these duties. He did not collect rent, advertise vacancies or show apartments. He had a key to no apartment but his own, and he consulted McArthur before undertaking any task not already mentioned.

McArthur testified, at trial, that he had owned the apartment complex for thirty-five years and had never experienced problems with prowlers. He stated that he never told Mellies to perform security functions on the premises but instead would expect him to call the police. Anything else, McArthur testified, would be beyond his responsibility. This testimony was corroborated by Mellies, who said McArthur had never told him to perform security functions. Thus it is clear that Mellies was not expressly authorized to protect the premises from alleged prowlers.

■ Nor do we believe that Mellies had any implied authority. Although the record indicates that Mellies thought protection of the premises was one of his duties, an agent can confer no authority upon himself. 2A C.J.S. Agency § 143, p. 763 (1972).

The implied and incidental authority of an agent . . . may not be extended beyond its legitimate scope, and should be deemed to include only such powers as are practically indispensable and essential in order to carry out the duties actually delegated to the agent. In order that an implied or incidental authority may exist, it must appear that the act to be done is proper, necessary or usual in order to

promote the duty or to carry out the purpose expressly delegated to the agent; it is not sufficient that the act of the agent is advantegeous to or convenient for his principal . . . . 3 Am.Jur.2d Agency § 71 (1962).

We find no evidence in the record that Mellies was authorized to perform security functions and must conclude that he was acting outside the scope of his authority at the time of the encounter with Serman and not in his capacity as a real estate manager. He therefore was not an insured under Unigard's policy. Accordingly, we find that the trial court did not err in directing a verdict in favor of Unigard.

Affirmed.

WILLIAM E. DOYLE, Circuit Judge (dissenting).

I respectfully dissent.

The appellee insurance company does not dispute the fact that Mellies was a real estate manager and as such was within the coverage of the insurance policy in question. However, the trial court determined that Mellies was not acting within the scope of his authority as a real estate manager at the time of the shooting.

As I view it the issue is whether Mellies was acting as a real estate manager for McArthur. The ultimate issue ·is whether the facts are such as to create an issue of fact; a question which is to be determined by the same standard in the appellate court as in the trial court. *See* Swearngin v. Sears Roebuck & Co., 376 F.2d 637 (10th Cir. 1967). This standard is whether reasonable minds could differ based upon a consideration of the evidence in a light most favorable to the party against whom the decision was made. *See* Taylor v. National Trailer Convoy, 433 F.2d 569 (10th Cir. 1970).

Mellies testified that his duties included mowing, trimming, fertilizing and watering the lawn, removal of garbage, shoveling snow, cleaning the premises, taking care of the yard, taking care of the tools and making minor repairs. He also testified that it was his belief that he was required to protect the people and property. *See* R. 35, 75, 76, 77. He stated that the manner of performing his duties was left largely to him. McArthur, the owner, agreed with this. McArthur said that he did not supervise the manner of doing the tasks; that Mellies took responsibilities very seriously.

He said that he had not spoken to Mellies about trespassers since he had never had any. He said, however, that if a trespass had taken place requiring something to be done, Mellies would have done it. He stated further that he trusted Mellies and relied on his sense of responsibility. McArthur refused to testify as to whether Mellies would have been expected to protect the tenants from molestation.

One incident was mentioned at the trial in which McArthur was told about a problem. But on that occasion Mellies settled the dispute. This pertained to actions of a tenant which interfered with watering the lawn. McArthur did not object to Mellies' handling of this.

Mellies testified that he had pursued plaintiff because of fear for his wife's safety as well as because of concern for the property and safety of the other tenants, expecially the property stored in the garage which was near where the plaintiff was standing when Mellies first saw him on the night in question. The garage contained not only the property of the tenants, it contained tools and other property of McArthur.

The circumstances to my mind, at least, clearly warranted submission of the case to the jury since Mellies' functions were not specifically restrictive.

I am of the opinion that the court erred in concluding as a matter of law that Mellies was not acting within the course and scope of his authority as a real estate manager and, secondly, in concluding that his pursuit of Serman was not an occurrence which arose out

of the ownership and maintenance of the premises of the insured. Under the evidence, it was not possible for the court to conclude as a matter of law that Mellies was not acting as manager of the property in question but was engaged in some unrelated frolic of his own. Similarly, the activity was a probable consequence of his employment.

Restatement of Agency 2d § 228 contains a definition of implied authority and declares that the conduct must be of the kind the servant is employed to perform and must be substantially within the time and space limits; it must be actuated, at least in part, for the purpose of serving the master, and if force is intentionally used by the servant, its use must not be so foreign to the occupation as to be unexpectable by the master.

In reaching its conclusion as a matter of law the trial court predicated its ruling on the view that Mellies was merely a handyman. However, Mellies performed a vast variety of functions, whereby the jury could have concluded that protection was within his authorization. Furthermore, it is to be remembered that Mellies was the sole representative of the owner living on his property, and thus it would not be practical for him to seek out the advice of the owner in a situation calling for immediate protection. Indeed, where this is the condition an agent is entitled to do what he reasonably believes to be necessary in order to prevent a substantial loss to the principal. *See* Restatement of Agency 2d § 47.

A case quite similar to ours is Guillen v. Kuykendall, 470 F.2d 745 (5th Cir. 1972). The jury was there allowed to determine whether a ranch owner's teen-age son, who customarily protected ranch cattle from coyotes with a rifle, had authority to shoot at or over the head of trespassers on the land.

Finally, the trial court here placed emphasis on the fact that the incident occurred on adjacent property. This, however, is not a valid issue where the location is in close proximity to the property and is arguably related to it. *See* Restatement of Agency 2d § 234.

I do not suggest the proper outcome of this case or what I consider to be a proper determination of the issues presented. I merely recognize that the evidence raises conflicting inferences and that the plaintiff was entitled to have his cause submitted to and determined by the jury.